SHORES, Justice.
This appeal involves claims based on wrongful death and personal injury arising out of the death of infant Corrie Duan Patton. After the jury returned a verdict in favor of the defendant, the plaintiff filed a motion for a new trial. The motion was denied, and the plaintiff appealed. We affirm.
Ursula Patton was pregnant with twins and received prenatal care from Dr. Carl Palmer. Although an ultrasound test had been performed on the plaintiff when she was six months pregnant, neither she nor Dr. Palmer was aware that she was carrying twins. Ms. Patton went into labor prematurely and delivered the first twin, Tor-rie, some time after 6:00 a.m. on June 7, 1987. Dr. Palmer then told Ms. Patton that she might be having twins, but, after examining her, he said he was only joking. After Dr. Palmer left, Ms. Patton began having contractions again and she delivered Corrie at approximately 8:53 a.m. Ms. Patton stated that the medical personnel immediately began resuscitative efforts on the infant. The baby died, but it is unclear from the record whether he died before or after he was delivered.
Ms. Patton was appointed administratrix of the infant’s estate, and she filed an action against the Hospital Authority for the City of Huntsville, Dr. Palmer, and Carolyn Brooks, a nurse who was present when the babies were delivered. Pursuant to the parties’ stipulations, the trial court dismissed the claims against the Hospital Authority and Ms. Brooks, and the matter proceeded to trial by jury against Dr. Palmer only. As previously noted, the jury returned a verdict in favor of Dr. Palmer, and the trial court entered a judgment in accord with the verdict.
Ms. Patton filed a motion for a new trial and raised three issues: 1) Whether defense counsel’s questions to the plaintiff’s expert witness regarding payment of his fees constituted reversible error; 2) whether an autopsy report was improperly excluded from evidence; and 3) whether the verdict was against the manifest weight of the evidence. The trial court denied the motion and Ms. Patton appealed. She has abandoned her argument on the issue of manifest weight of the evidence, and now pursues only the issues regarding defense counsel’s questioning of her expert witness and the admissibility of the autopsy report.
Ms. Patton first contends that certain questions about fees posed by defense counsel to her expert witness, Dr. George Maxwell, were inappropriate, misled the jury, and constituted reversible error. We disagree.
Dr. Maxwell testified on direct examination that he is a consultant with the Forensic Medical Advisory Service, an organization that sends materials provided by attorneys to appropriate medical consultants, who review the cases and report their opinions. On cross-examination, the following exchange took place:
“Q. [Defendant’s attorney] How much did Forensic pay you for giving me a deposition?
“A. [Dr. Maxwell] I billed them $750.
“Q. If I paid them $1500, which I did, that means that they got to keep the other $750; is that correct?
“A. I don’t know.
*129 “Q. They didn’t send it to you?
“A. They didn’t send it to me, that is correct.
“Q. Let me ask you this, then: What will Forensic pay you for coming down here to give testimony today?
“A. I will bill them for $1500.
“Q. Does that mean that they are probably charging $3,000 and will keep $1500 of it?
“A. I haven’t the foggiest notion.
“Q. Do you know if they charge perhaps a percentage of what the recovery is in a case?
“A. I have no idea.
“[Plaintiff’s attorney]: Your Honor, that is highly objectionable.
“[Defendant’s attorney]: Well, Bob, do you know?
“[Plaintiff’s attorney]: You asked questions in the deposition and you know very well that that is not true. It is a cheap shot, may it please the Court, and we object to it.
“THE COURT: Sustained.

“[Defendant’s attorney] RESUMED EXAMINATION:

“Q. The.bottom line is, you don’t know what Forensic charges?
“A. No, I have nothing to do with that.
“[Plaintiff’s attorney]: We move to exclude it, Your Honor, and have the jury—
“THE COURT: To exclude whether or not—
“[Plaintiff’s attorney Ford]: To exclude his question.
“[Plaintiff’s attorney Aldridge]: Some percentages with regard to any verdict.
“THE COURT: We will exclude that, but his last question[,] I will permit it.”
Ms. Patton claims that Dr. Palmer established an inference in the juror’s minds that she and Dr. Maxwell were involved in illegal and unethical conduct, that is, paying Dr. Maxwell a percentage of any recovery, knowing that this was not true. The plaintiff’s arguments have no support in the record.
Ms. Patton’s objection to the question was sustained, and, in response to her motion, the court excluded the question regarding compensation being based on a percentage of any recovery. The plaintiff received the relief she requested and neither made further objections nor requested further action from the court. Ms. Patton made only one request of the trial court, and the trial court granted it; she cannot now complain of the court’s failure to do what it was never asked to do. There is no error for this Court to consider. Prescott v. Martin, 331 So.2d 240 (Ala.1976).
Ms. Patton’s second argument on appeal is that the trial court erred in refusing to admit into evidence the autopsy report prepared by an expert witness she hired to perform the autopsy. She claims the report was admissible as a business records exception to the hearsay rule. Rule 44(a), A.R.Civ.P.
Dr. Josefino Aguilar, a licensed physician in private practice in Alabama, testified that he was employed by the plaintiff to perform an autopsy on her deceased infant. He stated that he conducted the autopsy and then prepared the autopsy report in accordance with standards set forth by the American College of Pathology, and that the report was a record kept by him in the normal course of his business as a forensic pathologist. When Ms. Patton moved to admit the autopsy report into evidence, Dr. Palmer objected on hearsay grounds, and the trial court sustained the objection. Thereafter, the plaintiff continued her examination of Dr. Aguilar, who testified in detail about all of the findings contained in the autopsy report he prepared.
Ms. Patton now urges this Court to hold that the autopsy report was admissible as a business record. Dr. Palmer argues that this autopsy report was prepared in anticipation of litigation and not in the regular course of business, and, furthermore, that all of the report’s findings were communicated to the jury, so that any error would have been harmless. In response, the plaintiff argues that she was prejudiced by the ruling because she was not allowed to hand the document to her expert, Dr. Maxwell, and because the jury did not have the “opportunity to hold, view, and study this material documentary evidence.”
*130 Even assuming, without deciding, that the autopsy report would have been admissible as a business records exception to the hearsay rule, we find no error. The report would have been cumulative, at best, because Dr. Aguilar not only described all of the findings contained in the report, but provided more detailed explanations for many of the statements included in the report. Upon a review of the evidence, we find that the error, if any, resulting in the trial court’s refusal to admit the autopsy report does not require a reversal:
“No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of ... the improper admission or rejection of evidence, ... unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”
Rule 45, A.R.App.P. See also, Partridge v. Miller, 553 So.2d 585 (Ala.1989) (no prejudice resulted from exclusion of accident report when officer testified about all details in the report).
For the foregoing reasons, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.