PER CURIAM.
This Court granted certiorari review to determine whether the Court of Civil Appeals applied the correct standard when reviewing the Tuscaloosa Circuit Court's order.
Facts and Procedural History
In 2004, Walter B. Price, Alan H. Goode, William A. Lunsford ("Lunsford"), and Cathy Lunsford (Lunsford's wife) formed Riverfront Development, LLC ("Riverfront"), with the goal of developing certain real estate located in Tuscaloosa ("the Riverwalk property"). Price and Goode each owned a one-third interest in the property, and Lunsford owned the remaining third. They took title to the Riverwalk property individually, not through Riverfront.
Apparently, Price and Lunsford were involved in other real-estate ventures together. On August 1, 2005, Price loaned Lunsford one million dollars for "Summit," a venture unrelated to the Riverwalk property. In October 2008, Lunsford was in default on the August 1, 2005, loan. Price made several proposals to Lunsford regarding curing Lunsford's default on the loan. On November 19, 2008, Lunsford wrote Price a letter agreeing with Price's proposal that Price would not have to pay his current capital contribution related to the Riverwalk property in exchange for his ameliorating part of Lunsford's debt to Price on the unrelated venture. Lunsford stated in the letter that he had first and second mortgages on all the property he owned and that, because the construction business had slowed, he had little cash with which to operate his construction business. Lunsford wrote that he thought his only alternative was to sell his interest the Riverwalk property. However, one month earlier, Lunsford had purchased Goode's one-third interest in the Riverwalk property.[1] Price states that he was unaware at that time that Lunsford had purchased Goode's interest.
Riverfront obtained the building permits and environmental permits to construct condominiums and retail businesses on the Riverwalk property. In early 2009, Lunsford told Price that he was still having financial difficulties. In June 2009, Lunsford told Price that Danny Butler was interested in purchasing the Lunsfords' interests and Price's interests in the Riverwalk property and in Riverfront.
On July 9, 2009, Lunsford sent Price an e-mail stating that Alabama One Credit Union ("Alabama One") had approved a loan for the purchase of the Riverwalk property and suggesting a closing on the property on Monday, July 13. On July 10, 2009, Lunsford sent Price another e-mail stating, in pertinent part:
"Wally thanks for returning my voice mail. I fully understand how you feel. I have spent a ton [of] time and expense on Summit and have not realized any personal profit from the deal and still have my neck stuck out on loans associated with it, but we had no way of *951 knowing the market would turn on us. The only consolation is there is good equity still there although a far cry from what we expected. It has been very frustrating to have to continue to work to make sales just to keep the banks satisfied.
"I understand your frustration with projects that don't turn out like you plan. I have 4 subdivisions that I would just like for someone to take over the loans. I have to put $ in them every month because we have few lot sales and it's not fun. I desperately need the cash that my construction company has in Riverwalk to keep the banks satisfied on other projects and that's the main reason to close as soon as we can. I too want to come back in Riverwalk if I have enough cash left to do so. I'm taking Danny at his word that he will let me back in.
"....
"Debbie [Nichols] said she has the closing papers ready for Monday so talk to Danny and he can let her know."
On July 10, 2009, Price sent Lunsford an e-mail stating that he would not be able to close on Monday. Price stated that he was talking to "Danny [Butler] about [Price's] buying back in the deal at some percentage but that has not been resolved. Going to try to see him later today or this weekend. Danny [Butler] said you may come back in the Riverwalk project as well." On July 13, 2009, Lunsford sent Price an e-mail stating that he had talked to Butler and that Butler was ready to close and that if they did not close by Wednesday, July 15, 2009, then Butler was not interested. On July 13, 2009, Alabama One sent Price a proposed settlement statement that provided that the borrower was Riverfront and that the sellers were "Wm. Lunsford and Wally Price."
On July 15, 2009, Price transferred all of his interest in Riverfront to the Lunsfords. That same day, Price signed a final settlement statement regarding the Riverwalk property, which listed Lunsford and Price as the sellers and Riverfront as the buyer. At the time Price signed as the seller, Lunsford had not signed the settlement statement. According to Price, Lunsford later signed the statement as a seller and as the manager and borrower for Riverfront. Price believed, based on representations made by Lunsford, Butler, and Alabama One, that Butler would be the borrower and agent for Riverfront after Butler purchased Riverfront from the Lunsfords. Price closed his part of the sale on July 15, 2009, by executing documents presented by Debra Nichols, a commercial loan officer for Alabama One. According to Price, the purpose of those documents was to convey all of Price's and Lunsford's interest in the Riverwalk property to Riverfront so Lunsford could then complete the sale of Riverfront to Butler with financing by Alabama One.
On July 21, 2009, Lunsford and Price signed a deed conveying their interests in the Riverwalk property to Riverfront. Lunsford, as "manager/member" of Riverfront, borrowed money in 2010 and in November 2012 completed the condominiums and retail space on the Riverwalk property.
On December 29, 2012, Price was told by Jerry Griffin that Butler was not the owner or a member of Riverfront. According to Griffin, Butler was promised a discounted condominium at the Riverwalk property in exchange for misrepresenting to Price his interest in purchasing Riverwalk.
On December 28, 2014, Price sued Lunsford and Alabama One alleging fraudulent misrepresentation, fraudulent suppression, promissory fraud, breach of the duty of care, breach of the duty of loyalty, tortious interference with a business relationship, *952 and civil conspiracy. Price attached 12 documents to his complaint: 1) the articles of organization of Riverfront; 2) the 2004 deed from the Tuscaloosa Department of Education to Lunsford, Goode, and Price for the Riverwalk property; 3) the August 1, 2005, security agreement/promissory note between Lunsford and Price regarding the Summit real-estate venture; 4) the November 19, 2008, letter from Lunsford to Price; 5) the 2008 property deed transferring Goode's interest in the Riverwalk property to Lunsford; 6) the July 9, 2009, e-mail from Lunsford to Price; 7) the July 10, 2009, e-mail from Lunsford to Price; 8) the July 10, 2009, e-mail from Price to Lunsford along with the July 13, 2009, e-mail from Lunsford to Price; 9) the proposed settlement statement; 10) the July 15, 2009, settlement statement; 11) the July 21, 2009, property deed from Lunsford and Price to Riverfront; and 12) the July 21, 2009 mortgage agreement between Alabama One and Riverfront (signed by Lunsford as manager/member), along with an October 25, 2010, increase in mortgage-indebtedness agreement.
On January 20, 2015, Alabama One filed a Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss, arguing that all of Price's claims were barred by the applicable two-year statutes of limitations. Alabama One attached a copy of a July 16, 2013, complaint with attached exhibits Price had filed against Alabama One, Lunsford, and Butler, among others, involving the same facts as in the present case, which Price had voluntarily dismissed. In discussing the statutes of limitations, Alabama One stated that the differences between Price's July 16, 2013, complaint and attached exhibits and his December 28, 2014, complaint and attached exhibits highlight that the December 28, 2014, complaint should be dismissed. Alabama One also attached a copy of the assignment-of-interest agreement dated July 15, 2009, which transferred Price's interest in Riverfront to the Lunsfords.
On January 27, 2015, Lunsford filed a Rule 12(b)(6) motion to dismiss, adopting all of Alabama One's arguments. Lunsford argued that Price failed to plead fraud with particularity, that Price failed to allege a basis for tolling the statutes of limitations regarding his fraud claims, and that Price's claims were barred by the Statute of Frauds because the final settlement statement and assignment-of-interest agreement made any prior oral representations irrelevant.
On March 20, 2015, Price filed responses to both motions to dismiss. In the responses, Price noted that, if the trial court were to consider the materials submitted with Alabama One's motion that were external to Price's complaint, the motion would be converted into a motion for a summary judgment and the trial court would be required to treat the motion as having been filed pursuant to Rule 56, Ala. R. Civ. P.
In response to the contention that his claims were time-barred, Price argued that the statutes of limitations were tolled as to his claims pursuant to § 6-2-3, Ala. Code 1975. Price alleged that he did not discover the fraudulent activities of Lunsford and/or Alabama One until his conversation with Griffin on December 29, 2012. Price submitted his affidavit and an affidavit from Griffin. Both testified that, during a conversation on December 29, 2012, Griffin informed Price that he understood that Butler had not purchased the Riverwalk property and that he did not hold any interest in Riverfront. Price further argued that he could not have discovered the allegedly fraudulent activities of Lunsford and Alabama One when he executed the documents for the closing of the sale of the Riverwalk property.
*953 On June 12, 2015, the trial court conducted a hearing in which it heard arguments from counsel of all parties on the motions filed by Alabama One and Lunsford. On June 29, 2015, the trial court entered a judgment, finding:
"1. [Price's] claims are barred by the statute[s] of limitations.
"2. Price has not [pleaded] facts in the Complaint showing that he is entitled to tolling pursuant to Ala. Code [1975,] § 6-2-3, nor is tolling applicable. See DGB, LLC v. Hinds, 55 So.3d 218, 226 (Ala. 2010)."
In the judgment, the trial court granted the motions to dismiss filed by Alabama One and Lunsford, and it dismissed Price's complaint with prejudice.
On July 17, 2015, Price filed a Rule 59, Ala. R. Civ. P., motion to alter, amend, or vacate the judgment, arguing that his claims were not time-barred. He also argued that, because the trial court had not excluded materials outside the pleadings in reaching its judgment, the motions to dismiss had been converted into motions for a summary judgment, and, thus, he argued, he should have been permitted to conduct discovery. Along with the Rule 59 motion, Price filed a motion for leave to amend his complaint, attaching a proposed amended complaint. Alabama One and Lunsford both filed responses to Price's postjudgment motions. On August 19, 2015, the trial court denied Price's Rule 59 postjudgment motion. There is no ruling in the record on the postjudgment motion to amend the complaint.
On August 31, 2015, Price filed a notice of appeal to this Court. This Court transferred the appeal to the Court of Civil Appeals pursuant to § 12-2-7(6), Ala. Code 1975. The Court of Civil Appeals held that the motions to dismiss should have been treated as summary-judgment motions because Alabama One attached to its motion the assignment-of-interest agreement between Price and the Lunsfords. The Court of Civil Appeals noted that Price, in his responses to the motions, recognized that Alabama One had submitted materials outside the pleadings. The Court of Civil Appeals further held that Price was not prejudiced by the conversion of the motions because, although there had been no discovery, Price had had sufficient opportunity to present the materials relevant to the motions and did in fact present two affidavits.
The Court of Civil Appeals went on to hold that Price's claims were barred by the applicable statutes of limitations because, it reasoned, the reasonable-reliance standard applies to assertions of reliance on fraudulent misrepresentations in determining when the statute of limitations begins to run. The Court of Civil Appeals explained that, according to the evidence in the record, Price had experience with real-estate ventures and he had offered no evidence or allegations to show that he could not understand the various agreements he executed relating to Riverfront and the Riverwalk property. That court further held that the plain terms of the agreements Price executed contradicted the alleged misrepresentations that Butler was purchasing Price's and the Lunsfords' interests in Riverfront. The court reasoned that Price therefore could not have reasonably relied on the alleged misrepresentations to persist in that belief and that he had knowledge of facts that alerted him to the potential for fraud. As a result, the Court of Civil Appeals concluded that the statute of limitations began to run on July 15, 2009, and that Price's claims were time-barred when he filed the complaint initiating this case on December 28, 2014. Price v. Alabama One Credit Union, 244 So.3d 936 (Ala. Civ. App. 2016).
*954 Discussion
The Court of Civil Appeals reviewed the trial court's order under the standard of review appropriate for a summary judgment. Both sides assert that the applicable standard of review in this case is the standard applicable to a Rule 12(b)(6), Ala. R. Civ. P., dismissal for failure to state a claim, namely, that the reviewing court does not consider whether the plaintiff will ultimately prevail, but only whether the plaintiff may possibly prevail. See Nance v. Matthews, 622 So.2d 297 (Ala. 1993). In order to determine the appropriate standard of review, we must first determine whether the motions to dismiss were converted to motions for a summary judgment.
In Universal Underwriters Insurance Co. v. Thompson, 776 So.2d 81, 83 (Ala. 2000), this Court stated:
"[T]he affidavit of Anderson did not require conversion of the motion for a judgment on the pleadings into a motion for a summary judgment, because the record is silent as to whether the trial court considered that affidavit. See Stockman [v. Echlin, Inc.], 604 So.2d [393] at 394 [ (Ala. 1992) ]. The trial court, in its order, did not indicate whether it considered Anderson's affidavit, and the record on appeal contains no transcript of the hearing on Thompson's motion. Because the record gives no indication that the trial court considered matters outside the pleadings, we treat the motion as a motion for a judgment on the pleadings. Accordingly, we look only to the pleadings in determining whether the trial court erred in granting Thompson's motion."
(Emphasis added.) Thompson involved a motion for a judgment on the pleadings, but the Court's rationale is applicable to a motion to dismiss. Likewise, in Stockman v. Echlin, Inc., 604 So.2d 393, 394 (Ala. 1992), this Court did not consider a motion for a judgment on the pleadings to have been converted into a motion for a summary judgment when "the trial court did not indicate whether it considered matters outside the pleadings in making its determination." In Stockman, the trial court held a hearing on the motion, but there was no transcript of the hearing and the record was silent as to whether the trial court had considered affidavits presented by both parties. The trial court's order indicated that the matter was before the court on a motion for a judgment on the pleadings and that, after considering the arguments and briefs of the parties, it was granting the motion. Similarly, in Sims v. Lewis, 374 So.2d 298, 302 (Ala. 1979), this Court declined to convert a Rule 12(b)(6) motion to a summary-judgment motion because "there [was] no indication ... that the trial court considered [affidavits submitted outside the pleadings] in making its determination on the 12(b)(6) motion."
It is true that this Court also has stated that, "unless the trial court expressly declines to consider the extraneous material, its conclusions may be construed to include the extraneous material." Phillips v. AmSouth Bank, 833 So.2d 29, 31 (Ala. 2002) (emphasis on "may" added). The Phillips Court did not state, however, that this Court must presume that a trial court considered extraneous materials submitted with a motion, thereby putting the trial court in error. We recognize, as Justice Bryan correctly points out in his dissent, that this Court has treated motions with materials attached as summary-judgment motions, relying on the language in Phillips and with no discussion of whether this Court had any discretion in presuming that the trial court considered the outside materials. See, e.g., Ex parte Novus Utils., Inc., 85 So.3d 988, 995 (Ala. 2011). Nevertheless, this Court has not adopted a bright-line rule as evidenced by the reasoning in Thompson, Stockman, and Sims.
*955 Rule 12(b) provides that, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." (Emphasis added.) Whether additional materials attached to a Rule 12(b)(6) motion will be considered is within the trial court's discretion. If an appellate court's review automatically converts a motion to dismiss supported by additional materials to a motion for a summary judgment, the discretion provided the trial court to determine whether to exclude matters outside the pleadings would be constrained.
In the present case, Price attached numerous exhibits to his complaint that were central to or referenced in the complaint. Exhibits attached to a pleading become part of the pleading. See Rule 10(c), Ala. R. Civ. P. ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); McCullough v. Alabama By-Products Corp., 343 So.2d 508 (Ala. 1977) (holding that an exhibit attached to a complaint became part of the complaint and that, if there is any variance between the allegations in the pleading and the exhibit attached, the exhibit controls). Alabama One attached to its motion to dismiss Price's previously filed complaint along with the assignment-of-interest agreement. In his motion to dismiss, Lunsford adopted the arguments raised in Alabama One's motion to dismiss. In response to the motions to dismiss, Price filed affidavits in support of his position. Price also noted that, if the trial court were to consider the materials submitted with Alabama One's motion that were external to his complaint, the motion would be converted into a motion for a summary judgment and the trial court would be required to treat the motion as one filed pursuant to Rule 56.
The trial court held a hearing on the motions to dismiss, but the transcript from that hearing is not in the record. The trial court's order does not refer to or indicate that it considered any document other than the complaint, nor does it state that the court expressly excluded matters outside the pleadings. The order refers only to the motions to dismiss, and it dismisses the complaint with prejudice. The trial court also cited DGB, LLC v. Hinds, 55 So.3d 218 (Ala. 2010), which involved only a motion to dismiss and its corresponding standard of review. The trial court's judgment was phrased entirely in terms of a motion to dismiss.
Based on the foregoing, we cannot say that the trial court considered matters outside the complaint. Therefore, the motions to dismiss were not converted to motions for a summary judgment. We now turn to the merits of Lunsford's and Alabama One's motions to dismiss.
In Nance v. Matthews, 622 So.2d at 299, this Court set forth the standard of review applicable to an order granting a motion to dismiss:
"The appropriate standard of review under Rule 12(b)(6) [, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [the pleader] to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala. 1985) ; Hill v. Falletta, 589 So.2d 746 (Ala. Civ. App. 1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala. 1985) ; Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala. 1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in *956 support of the claim that would entitle the plaintiff to relief."
Price alleged in his complaint that he agreed to sell his interest in the Riverwalk property on July 15, 2009. According to Price, he was told that he and Lunsford were selling their interests in the Riverwalk property to Danny Butler. Lunsford told Price that he was having financial difficulties and that he would have to sell his interest in the property. Price could not continue the development of the Riverwalk property without Lunsford. Price also alleged that Lunsford told him that "together they would sale [sic] the property in combination with all interests in Riverfront Development, LLC to Butler." Price alleged that, despite the representations made to him, Butler did not purchase any interest in Riverfront or the Riverwalk property. Price claimed that the purpose of Lunsford's alleged deception was to divest Price of his interest in the Riverwalk property. Price further alleged that Alabama One participated in the deception by representing that Butler was purchasing the Riverwalk property. Specifically, Price alleged that Alabama One intentionally held the signing of the settlement statement at different times so that it could conceal the fact that Lunsford, not Butler, was purchasing the Riverwalk property. Price alleged that on December 29, 2012, Jerry Griffin told him that Butler was not the owner, manager, or a member of Riverfront. According to the complaint, Butler was promised a discounted condominium in exchange for misrepresenting to Price his interest in purchasing the Riverwalk property. Price filed his complaint on December 28, 2014.
In their motions to dismiss, Lunsford and Alabama One argue that Price's claims are untimely and are barred by the applicable two-year statute of limitations. Price argues that his claims fall within the savings clause of § 6-2-3, which provides:
"In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."
In DGB, LLC v. Hinds, 55 So.3d at 226, this Court stated:
"This Court has stated: 'When, as in this case, the plaintiff's complaint on its face is barred by the statute of limitations, the complaint must also show that he or she falls within the savings clause of § 6-2-3.' Miller v. Mobile County Bd. of Health, 409 So.2d 420, 422 (Ala. 1981). '[T]he burden is upon he who claims the benefit of § 6-2-3 to show that he comes within it.' Amason v. First State Bank of Lineville, 369 So.2d 547, 551 (Ala. 1979). However, a 'dismissal based on the statute of limitations is proper only if, from the face of the complaint, it is apparent that the tolling provisions do not apply.' Travis v. Ziter, 681 So.2d 1348, 1351 (Ala. 1996).
"This Court has held that to show that a plaintiff's claims fall within the savings clause of § 6-2-3 a complaint must allege the time and circumstances of the discovery of the cause of action. See, e.g., Angell v. Shannon, 455 So.2d 823, 823-24 (Ala. 1984) ; Papastefan v. B & L Constr. Co., 356 So.2d 158, 160 (Ala. 1978). The complaint must also allege the facts or circumstances by which the defendants concealed the cause of action or injury and what prevented the plaintiff from discovering the facts surrounding the injury. See, e.g., Smith v. National Sec. Ins. Co., 860 So.2d 343, 345, 347 (Ala. 2003) ; Lowe v. East End Mem'l Hosp. & Health Ctrs., 477 So.2d 339, 341-42 (Ala. 1985) ;
*957 Miller, 409 So.2d at 422. See also Amason, 369 So.2d at 550."
Here, viewed in a light most favorable to Price, see Nance, supra, the complaint alleges the time and circumstances of his discovery of the claims by virtue of his conversation with Griffin, the facts and circumstances by which Lunsford and Alabama One concealed their fraud, i.e., the circumstances of the signing of the settlement statement, and the circumstances that prevented Price from discovering the fraud within the statutory limitations period, i.e., the publicly recorded property deed attached to the complaint did not indicate who owned or managed Riverfront, the entity that was purchasing the Riverwalk property. Therefore, the trial court erred in granting Lunsford's and Alabama One's motions to dismiss.[2]
We note that, even if we reviewed the trial court's order as a summary judgment, as did the Court of Civil Appeals, a genuine issue of material fact exists, thereby making inappropriate either a dismissal based on the complaint alone or a summary judgment based on the voluntarily dismissed complaint[3] and assignment-of-interest agreement attached to Alabama One's motion to dismiss along with Price's affidavits. Considering the attachments to the motion to dismiss and Price's affidavits, as the Court of Civil Appeals assumed the trial court did, Price has presented a jury question, making a summary judgment inappropriate.
Price alleged that he did not discover, and reasonably could not have discovered, the fraudulent activities of Lunsford and/or Alabama One until his conversation with Griffin on December 29, 2012. Price submitted his own affidavit and one from Griffin. Both testified that, during a conversation on December 29, 2012, Griffin informed Price that he understood that Butler had not purchased the Riverwalk property and did not hold any interest in Riverfront. Price further argued that he reasonably failed to discover the allegedly fraudulent activities of Lunsford and Alabama One when he executed the documents for the closing of the sale of the Riverwalk property because of the misrepresentations by Lunsford and employees of Alabama One. His affidavit in support of his responses contained the following testimony:
*958 "11. On July 13, 2009, I was sent a proposed HUD One Settlement Statement sent to me by facsimile from [Alabama One]. The borrower was listed as [Riverfront]. This in no way as alleged in the Motion to Dismiss filed by [Alabama One] would have alerted me that Danny Ray Butler was not the purchaser of the Riverwalk property or [Riverfront] nor led me to inquire. In fact, I was told that Danny Ray Butler was purchasing our entire interest in [the Riverwalk property] through [Riverfront] by W.A. Lunsford and Danny Ray Butler. I believed it because Debbie Nichols, [Alabama One's] Loan Officer in charge of conducting the closing, made representations to me that Danny Ray Butler had to close by that date, I relied upon these representations and this HUD One proposed settlement statement and statements by W.A. Lunsford and Danny Ray Butler to believe that the Lunsfords were conveying their entire interest out of financial necessity and that Danny Ray Butler was the purchaser and would lose his financing if I didn't act to close on that day. I had no interest in divesting myself of my interest in [the Riverwalk property] that I had worked so diligently to procure. I would have never sold my interest to the Lunsfords, any LLC or other business entity which they owned, I specifically stated to W.A. Lunsford and Danny Ray Butler that I did not want to sell, but was doing so because I could not stand alone financially to continue the project ....
"12. On July, 15, 2009, I was misled by [Alabama One's] closing officer and by the final HUD Settlement Statement presented to me at closing. At the time this document was signed by me, W.A. Lunsford's line for signature as Seller was unsigned and the line for signature of the Borrowers and Manager of [Riverfront] was unsigned. At the time I signed all the closing documents, I asked the closing officer when W.A. Lunsford and Danny Ray Butler would be by to sign the closing documents. The [Alabama One] closing officer replied that they would be by later that day to sign all the necessary documents. I did not receive copies of the fully executed documents, including the HUD statements, until January of 2013. Up until my December 29, 2012, conversation with Jerry Griffin, it was my firm belief that the Lunsfords and I had sold all our interest in the Riverwalk Property and [Riverfront].
"13. I believed the false representations made by W.A. Lunsford that he was forced to sell his interest in the ... Riverwalk [property] and [Riverfront] to Danny Ray Butler, because of his poor financial condition. I also believed the false representations made by Debbie Nichols an officer at [Alabama One], along with the misrepresentations made by Danny Ray Butler that he was the purchaser and he was the one obtaining the financing from [Alabama One]. These false representations were made in order to remove me as a partner from [Riverfront] and as a co-owner of [the Riverwalk property]."
In his "Amended Response to Defendant's Motion to Dismiss Filed by Alabama One Credit Union," Price noted that Alabama One had attached certain closing documents to its motion, but he argued that "[t]he documents alleged would fit within what [Price] was told by Lunsford: that Danny Butler was buying both Riverfront Development, LLC and the Riverwalk Property."
It is true that the assignment-of-interest agreement shows that Price was transferring his interest in Riverfront to Lunsford, but Price alleged that he was told this was one of the intermediate steps necessary before Butler ultimately purchased the entire *959 enterprise. He also presented testimony that it was necessary that the closing happen immediately or that Butler would back out. The assignment-of-interest agreement alone does not negate Price's allegations in his complaint with regard to the transfer of the Riverwalk property. The evidence, on balance, may favor Lunsford and Alabama One's version of events, but it cannot be said that Price did not present a genuine issue of fact as to a scenario under which he could possibly prevail. That is, Price detailed and supplied evidence of a fraudulent scheme, the true nature of which he did not discover until years after the transaction occurred, and, therefore, the applicable statutes of limitations were tolled.
For these reasons, the judgment of the Court of Civil Appeals is reversed and the case remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, Bolin, Parker, and Main, JJ., concur.
Murdock, J., concurs specially.
Shaw and Bryan, JJ., dissent.
Wise, J., recuses herself.
MURDOCK, Justice (concurring specially).
I concur in the main opinion, except that I decline the opportunity to reaffirm the absolute nature of the rule stated in McCullough v. Alabama By-Products Corp., 343 So.2d 508 (Ala. 1977). Aside from that comment, I write separately to comment briefly on (1) the notion that the complaint filed in Walter B. Price's 2013 action was a nullity, as discussed in note 3 of the main opinion, and (2) the issue of how to treat the July 15, 2009, assignment-of-interest agreement attached to Alabama One Credit Union's motion to dismiss.
As the main opinion explains, Price's 2013 complaint, having been previously dismissed, is a nullity in the sense that it cannot be revived or reviewed as a basis for a pending action. That is not to say, and I do not read the main opinion as saying, that statements in the 2013 complaint (assuming that complaint to have been properly submitted to the trial court otherwise) could not be considered by the trial court in the underlying action.
"A party's pleading in a prior case is admissible in a subsequent action as an admission of the truth of the facts stated in the pleading if such pleading was filed [on] behalf of the party in another action, and was drawn under the party's direction or with his knowledge of its content."
Yates v. Christian Benevolent Funeral Homes, Inc., 356 So.2d 135, 137 (Ala. 1978). See also City of Gulf Shores v. Harbert Int'l, 608 So.2d 348, 354 (Ala. 1992) (noting that "a party's pleadings in a prior case are admissible against that party in a subsequent action as an admission against interest"). Thus, hypothetically, if statements in Price's July 16, 2013, complaint contained statements evidencing knowledge by Price more than two years before the filing of the December 28, 2014, complaint that Danny Butler was not involved in the transaction at issue, then the 2013 complaint would be relevant to the statute-of-limitations defense presented in Alabama One's motion to dismiss.
In point of fact, though, Price's 2013 complaint contains no such statements. Thus, Price's 2013 complaint is irrelevant to the motions to dismiss ruled upon by the trial court in the present case.
The same cannot necessarily be said, however, as to the July 15, 2009, assignment (by which Price transferred his interest in Riverfront Development, LLC, to William A. Lunsford), a copy of which was *960 attached to Alabama One's motion to dismiss. It might be argued that we must determine whether the trial court did or did not consider this attachment in order to know whether the motion is to be treated as one seeking a dismissal or a summary judgment. As the main opinion explains, however, the resolution of this issue ultimately is not dispositive in the present case because, even if we were to assume the trial court considered this attachment, the affidavits submitted by Price nonetheless create a genuine issue of material fact, thereby requiring the reversal of the trial court's judgment in any event.

It is unclear from the record whether Goode still has an interest in Riverfront.

The savings clause of § 6-2-3 generally applies not only to fraud, but also to any cause of action fraudulently concealed. DGB, LLC v. Hinds, 55 So.3d at 225 n. 3. This would include Price's breach-of-duty and tortious-interference claims.

It is undisputed that Price voluntarily dismissed the prior complaint. The Court of Civil Appeals did not discuss this attachment to the motion to dismiss in their analysis of the treatment of the motions to dismiss. Price did not refer to his voluntarily dismissed complaint in the present complaint; thus, the attachment was outside the pleadings. We recognize that the effect of a voluntary dismissal is to render the proceedings a nullity and to leave the parties as if the action had never been brought. Gallagher Bassett Servs., Inc. v. Phillips, 991 So.2d 697, 700 (Ala. 2008). A voluntary dismissal is of no effect-it is a legal nullity. A voluntary dismissal places the parties in a position as if the suit had never been filed. Ex parte Sealy, LLC, 904 So.2d 1230 (Ala. 2004). However, we cannot say that the trial court could not consider the voluntarily dismissed complaint in this case. There is still a court record of the voluntarily dismissed complaint, though the complaint is considered a nullity. Both Price's voluntarily dismissed complaint and the complaint in this case involve fraud claims against Lunsford and Alabama One. Cf. Marrero v. Costco Wholesale Corp., 52 F.Supp.3d 437, 441 (D. P.R. 2014) (holding that the defendant's attachment to its motion to dismiss of the plaintiff's prior voluntarily dismissed complaint could not be considered where the voluntarily dismissed complaint asserted different claims).