LYONS, Justice.
 

 DGB, LLC (“DGB”), David P. Herrick, Bradley P. Katz, and C. Gibson Vance appeal from a judgment of the Baldwin Circuit Court dismissing their claims against multiple defendants. We affirm the trial court’s judgment in part, reverse it in part, and remand the case to the trial court for further proceedings.
 

 Procedural History
 

 Herrick, Katz, and Vance own DGB. DGB is part-owner of a limited liability company known as Bon Harbor, LLC (“Bon Harbor”). On February 5, 2008, DGB, Herrick, Katz, and Vance (collectively “the investors”) sued Michael Hinds; Paul Kirkland; Ray Jacobsen; Decatur, LLC (“Decatur”); Gulf Stream Properties, Inc. (“Gulf Stream”); Fruitticher-Lowery Appraisal Group, Inc. (“Fruitticher”); and Seaside Title Company, LLC (“Seaside”), in the Montgomery Circuit Court. The complaint stated claims of fraudulent misrepresentation, fraudulent suppression, securities fraud, shareholder oppression, breach of fiduciary duty, negligence, and conspiracy against the various named defendants. The complaint alleged misconduct by the defendants related to Bon Harbor’s July 2005 purchase of real property located in Baldwin County.
 

 The investors amended their complaint in May 2008 to add Eden Jones Hinds, Michael Hinds’s wife, as a defendant and to add claims against the Hindses for conversion, unjust enrichment, and fraudulent transfer. In October 2008, the action was transferred to the Baldwin Circuit Court. Gulf Stream and Kirkland subsequently moved to dismiss the claims against them. They argued that that the investors’ claims were barred by the applicable statutes of limitation; that the investors lacked standing; that the investors had failed to state a claim upon which relief could be granted, see Rule 12(b)(6), Ala. R. Civ. P.; and that the investors had failed to plead their fraud claims with particularity as required by Rule 9(b), Ala. R. Civ. P. Decatur and the Hindses filed an identical motion. The investors responded and moved to amend their complaint. On March 3, 2009, except for the fraudulent-transfer claim asserted against the Hindses, the trial court dismissed the investors’ claims against Gulf Stream, Kirkland, Decatur, and the Hinds-es. On the same day, the trial court granted the investors’ motion for leave to amend their complaint.
 

 Jacobsen, Fruitticher, and Seaside then moved to dismiss the investors’ claims against them, asserting the same arguments as the other defendants. The investors responded and filed a second amended complaint, adding a claim for an accounting and dissolution of Bon Harbor. Within a week, the investors filed a third amended complaint, stating the same claims and noting that the new complaint “address[ed]
 
 *222
 
 the [trial court’s] concern over the specificity of the [investors’] fraud allegations.” The defendants all renewed their motions to dismiss, stating the same grounds as their previous motions. Ultimately, in a series of orders, the trial court dismissed all but the investors’ fraudulent-transfer claim against the Hindses. On August 24, 2009, on the investors’ motion, the trial court certified its orders of dismissal as final under Rule 54(b), Ala. R. Civ. P. The investors appealed.
 

 Facts as Alleged in the Third Amended Complaint
 

 In their brief on appeal, the investors expressly waive any appeal from the trial court’s dismissal of their claims against Fruitticher and Seaside and from the trial court’s dismissal of their claims alleging conversion and unjust enrichment against the Hindses. The investors’ fraudulent-transfer claim against the Hindses remains pending before the trial court. Accordingly, the only claims before us are the investors’ claim seeking an accounting and dissolution of Bon Harbor and their claims alleging fraudulent misrepresentation, fraudulent suppression, securities fraud, shareholder oppression, breach of fiduciary duty, negligence, and conspiracy against Gulf Stream, Kirkland, Decatur, Michael Hinds (“Hinds”), and Jacobsen. In their third amended complaint the investors allege the following facts relevant to those claims.
 

 Hinds and Kirkland, through other entities, own Decatur and Gulf Stream. In early 2005, Decatur and Gulf Stream formed Bon Harbor to purchase and develop real property in Baldwin County. At about the same time, Hinds and Kirkland asked Herrick, Katz, and Vance to invest in the development. Herrick, Katz, and Vance agreed, and in June 2005, their eom-pany, DGB, purchased a 40% interest in Bon Harbor for $2,000,000. Bon Harbor, therefore, is owned by Decatur, Gulf Stream, and DGB.
 

 Hinds and Kirkland acted as managers of Bon Harbor. The investors allege that they entrusted Hinds and Kirkland “to negotiate and execute land transactions on behalf of Bon Harbor because of their purported expertise and their respective roles as Managing Members having authority to make managerial decisions.” The investors also allege that, as managers and, through Decatur and Gulf Stream, as alleged majority members of Bon Harbor, Hinds and Kirkland owed them “fiduciary obligations to protect the legitimate investment expectations of the [investors] and to disclose material facts surrounding Bon Harbor’s business activities, including facts surrounding the purchase of’ real property by Bon Harbor.
 

 Bon Harbor purchased 14.36 acres of real property in Baldwin County (“the property”) on July 6, 2005 (“the July 2005 transaction”).
 
 [1]
 
 Hinds and Kirkland represented to the investors that the purchase price for the property was $10,000,000. At Hinds and Kirkland’s request, Fruitticher appraised the property at approximately $14,000,000. Although the investors’ allegations of this fact are unclear, it appears that Seaside acted as closing agent for the transaction. The investors contributed $2,500,000 toward the purchase price; the third amended complaint does not specify whether this contribution was made through DGB or by Herrick, Katz, and Vance directly. The remaining $7,500,000 was financed through a loan from United Bank, which Herrick, Katz, and Vance personally guaranteed. Hinds and Kirkland did not contribute any funds to the July
 
 *223
 
 2005 transaction, and it is unclear whether they guaranteed the loan from United Bank.
 

 Bon Harbor purchased the property from Jacobsen. Unknown to the investors, just days before Bon Harbor purchased the property for $10,000,000, Jacob-sen had purchased the property for $5,000,000. The third amended complaint does not state from whom Jacobsen purchased the property. The investors allege that Hinds and Kirkland, and through them Decatur and Gulf Stream, knew that Jacobsen had purchased the property for one-half what Bon Harbor paid for it but concealed that fact from the investors, “before, during, and after” the July 2005 transaction. The investors allege that the information concealed was “entirely under the control” of Hinds and Kirkland and that the investors “did not have access” to it. The investors also allege that Hinds, Kirkland, Decatur, and Gulf Stream had fiduciary duties to disclose facts material to the July 2005 transaction — including Ja-cobsen’s purchase price — to them but failed to do so.
 

 The investors also allege that before Ja-cobsen purchased the property, he “obtained” funds from Bon Harbor and that Hinds and Kirkland used Bon Harbor assets to obtain options on and to develop their own properties adjacent to the property purchased by Bon Harbor. The investors allege that Hinds and Kirkland concealed all of this information from them.
 

 The investors allege that they “relied on the defendants’ silence by forgoing independent initiatives to obtain the property records for themselves to learn whether their fiduciaries were committing a fraud.” They also allege that they did not have actual knowledge of the concealed facts until 2007 when they were deposed in separate litigation initiated by United Bank related to the transaction (“the United Bank litigation”) and that they could not have had constructive knowledge of the facts concealed until February 6, 2006, when Hinds and Kirkland sent them tax documents related to the July 2005 transaction.
 

 Standard of Review
 

 We review the trial court’s dismissal of the investors’ claims de novo.
 

 “On appeal, a dismissal is not entitled to a presumption of correctness.
 
 Jones v. Lee County Commission,
 
 394 So.2d 928, 930 (Ala.1981);
 
 Allen v. Johnny Baker Hauling, Inc.,
 
 545 So.2d 771, 772 (Ala.Civ.App.1989). The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief.
 
 Raley v. Citibanc of Alabama/Andalusia,
 
 474 So.2d 640, 641 (Ala.1985);
 
 Hill v. Falletta,
 
 589 So.2d 746 (Ala.Civ.App.1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail.
 
 Fontenot v. Bramlett,
 
 470 So.2d 669, 671 (Ala.1985);
 
 Rice v. United Ins. Co. of America,
 
 465 So.2d 1100, 1101 (Ala.1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.
 
 Garrett v. Hadden,
 
 495 So.2d 616, 617 (Ala.1986);
 
 Hill v. Kraft, Inc.,
 
 496 So.2d 768, 769 (Ala.1986).”
 

 Nance v. Matthews,
 
 622 So.2d 297, 299 (Ala.1993).
 

 Analysis
 

 The trial court did not specify the grounds for its dismissal of the investors’
 
 *224
 
 claims. Accordingly, in their brief on appeal, the investors argue that the trial court erred in dismissing their claims as to each of the grounds asserted by Hinds, Decatur, Kirkland, Gulf Stream, and Ja-cobsen (hereinafter referred to collectively as “the defendants”) in their motions to dismiss.
 

 1.
 
 Statutes of Limitation
 

 The events giving rise to the investors’ claims occurred in July 2005. The investors filed their initial complaint in February 2008, more than two and a half years later. Regarding the investors’ claim for an accounting and dissolution of Bon Harbor, § 10-12-38, Ala.Code 1975, provides:
 

 “On application by or for a member, the circuit court for the county in which the articles of organization are filed may decree dissolution of a limited liability company
 
 whenever
 
 it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement.”
 

 (Emphasis added.) Accordingly, DGB, as a member of Bon Harbor, could have sought a judicial dissolution of Bon Harbor “whenever” DGB could show that it was “not reasonably practicable to carry on the business in conformity with” Bon Harbor’s articles of organization. § 10-12-38. As a result, there is no basis for concluding that this claim is time-barred by a statute of limitations.
 

 A two-year statutory limitations period applies to each of the investors’ remaining claims. See, e.g., §§ 6 — 2—38(Z), and 8-6-19(f), Ala.Code 1975. The defendants, therefore, argue that these claims are untimely and are barred by the applicable statutes of limitation. The investors argue that all of their remaining claims fall within the savings clause of § 6-2-3, Ala.Code 1975, which states:
 

 “In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.”
 

 The investors argue that § 6-2-3 applies not only to their fraud-based claims — fraudulent misrepresentation, fraudulent suppression, and securities fraud — but also to their remaining claims of shareholder oppression, breach of fiduciary duty, civil conspiracy, and negligence.
 
 [2]
 
 We agree. This Court has stated: “We have recognized that § 6-2-3 may be ‘applied to other torts not arising in fraud in appropriate cases, and applies to a fraudulent concealment of the existence of a cause of action.’ ”
 
 Holdbrooks v. Central Bank of Alabama, N.A.,
 
 435 So.2d 1250, 1251 (Ala.1983) (quoting
 
 Tonsmeire v. Tonsmeire,
 
 285 Ala. 454, 457, 233 So.2d 465, 467 (Ala.1970)). More specifically, this Court has explained, regarding a predecessor of § 6-2-3:
 

 “While this statute is usually applicable to cases wherein fraud is the basis of the cause of action, it is the settled construction that its purpose is to make available at law the rule theretofore prevailing in equity; and
 
 applies to a fraudulent concealment of the existence of a cause of action from the party in whose favor the cause of action exists.
 
 A party cannot profit by his own wrong in concealing a cause of action against himself until barred by limitation. The statute of limitations cannot be converted into an instrument of fraud.”
 

 
 *225
 

 Hudson v. Moore,
 
 239 Ala. 130, 133, 194 So. 147, 149 (1940) overruled on other grounds by
 
 Ex parte Sonnier,
 
 707 So.2d 635 (Ala.1997)(emphasis added).
 
 [3]
 

 In
 
 B & B Properties v. Dryvit Systems, Inc.,
 
 708 So.2d 189 (Ala.Civ.App.1997), the Court of Civil Appeals found a plaintiffs assertion of tolling based on fraudulent concealment “without merit,” stating: “There is no ‘discovery rule’ that tolls the running of the limitations period with respect to negligence or wantonness actions. The ‘discovery rule’ is applicable only to fraud actions.” 708 So.2d at 192 (citing
 
 Henson v. Celtic Life Ins. Co.,
 
 621 So.2d 1268, 1274 (Ala.1993)).
 
 [4]
 
 The Court of Civil Appeals’ conclusion is inconsistent with the settled principle, cited above, that § 6-2-3 “applies to a fraudulent concealment of the existence of a cause of action from the party in whose favor the cause of action exists.”
 
 Hudson,
 
 239 Ala. at 133, 194 So. at 149. Furthermore, the Court of Civil Appeals’ reliance on
 
 Henson,
 
 621 So.2d at 1274, is misplaced because that decision did not involve any allegation that the defendant fraudulently concealed the existence of the cause of action. See footnote 4, supra. We therefore overrule
 
 B & B Properties v. Dryvit Systems, Inc.,
 
 to the extent that it conflicts with our decisions recognizing the application of § 6-2-3 to the fraudulent concealment of a cause of action.
 

 Because § 6-2-3 “applies to the fraudulent concealment of the existence of
 
 *226
 
 a cause of action,”
 
 Hudson,
 
 supra, if the investors have sufficiently alleged the fraudulent concealment of their claims, § 6-2-3 may apply even to their non-fraud claims. This Court has stated: “When, as in this case, the plaintiffs complaint on its face is barred by the statute of limitations, the complaint must also show that he or she falls within the savings clause of § 6-2-3.”
 
 Miller v. Mobile County Bd. of Health,
 
 409 So.2d 420, 422 (Ala.1981). “[T]he burden is upon he who claims the benefit of § 6-2-3 to show that he comes within it.”
 
 Amason v. First State Bank of Lineville,
 
 369 So.2d 547, 551 (Ala.1979). However, a “dismissal based on the statute of limitations is proper only if, from the face of the complaint, it is apparent that the tolling provisions do not apply.”
 
 Travis v. Ziter,
 
 681 So.2d 1348, 1351 (Ala.1996).
 

 This Court has held that to show that a plaintiffs claims fall within the savings clause of § 6-2-3 a complaint must allege the time and circumstances of the discovery of the cause of action. See, e.g.,
 
 Angell v. Shannon,
 
 455 So.2d 823, 823-24 (Ala.1984);
 
 Papastefan v. B & L Constr. Co.,
 
 356 So.2d 158, 160 (Ala.1978). The complaint must also allege the facts or circumstances by which the defendants concealed the cause of action or injury and what prevented the plaintiff from discovering the facts surrounding the injury. See, e.g.,
 
 Smith v. National Sec. Ins. Co.,
 
 860 So.2d 343, 345, 347 (Ala.2003);
 
 Lowe v. East End Mem’l Hosp. & Health Ctrs., 477
 
 So.2d 339, 341-42 (Ala.1985);
 
 Miller,
 
 409 So.2d at 422. See also
 
 Amason,
 
 369 So.2d at 550.
 

 In
 
 Miller,
 
 the plaintiffs, husband and wife, sued a medical clinic and the manufacturer of a contraceptive device that they alleged had injured the wife some years before. Regarding concealment, the plaintiffs alleged only that the clinic and the manufacturer had “ ‘fraudulently concealed] the defective and unreasonably dangerous condition of [the] product from the Plaintiff after they knew said product was defective and dangerous.’ ” 409 So.2d at 422. This Court stated:
 

 “The complaint fails to allege any of the facts or circumstances by which the ap-pellees concealed the cause of action or injury. The complaint also fails to allege what prevented Mrs. Miller from discovering facts sumunding the injury.
 
 See
 
 Amason v. First State Bank of Lineville,
 
 369 So.2d 547 (Ala.1979);
 
 Garrett v. Raytheon Co.,
 
 368 So.2d 516 (Ala.1979).
 
 The plaintiffs make only generalized allegations to support their claim for fraudulent concealment.
 
 Although under modern rules of civil practice the pleadings only need to put the defending party on notice of the claims against him, Rule 9(b)[, Ala. R. Civ. P.,] qualifies the generalized pleadings permitted by Rule 8(a), [Ala. R. Civ. P.]. ‘The pleading must show time, place and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained.’ Rule 9(b), ... Committee Comments. The allegations contained in count 6 fail to meet the requirements of Rule 9. Thus, the trial court did not err in granting the motion to dismiss in favor of [the defendant].”
 

 409 So.2d at 422 (emphasis added).
 

 In
 
 Lowe,
 
 the administrator of a decedent’s estate sued a hospital in 1983 seeking recovery for the decedent’s alleged wrongful death in 1980. The plaintiff alleged simply that the hospital had fraudulently concealed its conduct from the plaintiff and had denied causing the decedent’s death. The plaintiff further alleged that he “ ‘discovered in July of 1983 representations of [the hospital] were false and that [the hospital] had fraudulently concealed
 
 *227
 
 facts giving rise to the cause of action.’ ” 477 So.2d at 340. Based on
 
 Miller,
 
 this Court determined that the allegations of the complaint did not state facts sufficient to show that the statutory limitations period had been tolled. 477 So.2d at 342.
 

 In
 
 Smith,
 
 the plaintiff alleged multiple tort claims against an insurance company and alleged that she had discovered her claims within two years of filing her complaint when she “ ‘heard in her community that there may be something wrong with her insurance policy.’ ” 860 So.2d at 345-46. Relying on
 
 Miller
 
 and
 
 Lowe,
 
 this Court concluded that Smith’s complaint “ ‘fail[ed] to allege any of the facts or circumstances by which the appellees concealed the cause of action or injury,’ and ‘fail[ed] to allege what prevented [Smith] from discovering facts surrounding the [fraud].’ ” 860 So.2d at 347 (quoting
 
 Miller,
 
 409 So.2d at 422).
 

 Based on
 
 Miller, Lowe,
 
 and
 
 Smith,
 
 the defendants argue that the investors have not alleged facts or circumstances by which the defendants concealed a cause of action nor have they alleged what prevented the investors from discovering the facts the investors allege were concealed. Therefore, the defendants argue, the trial court properly dismissed the investors’ claims. We disagree. Although the third amended complaint is not likely to be considered for inclusion in a form book as a model complaint, unlike the generalized allegations at issue in
 
 Miller, Loive,
 
 and
 
 Smith,
 
 the investors have alleged more than just the circumstances of their discovery of their claims and that the defendants concealed them. Viewed in the light most favorable to the investors, see
 
 Nance,
 
 622 So.2d at 299, the third amended complaint alleges 1) the time and circumstances of the investors’ discovery of their causes of action, 2) the facts of circumstances by which the defendants concealed the investors’ causes of action or injury, and 3) what prevented the investors from discovering the facts surrounding their injury.
 

 First, the investors allege that they discovered their causes of action when they were deposed in 2007 in the United Bank litigation. The investors, therefore, allege the time and circumstances of their discovery of their causes of action. See
 
 Angell,
 
 455 So.2d at 823-24;
 
 Papastefan,
 
 356 So.2d at 160.
 

 Second, the investors allege that Jacob-sen had obtained funds from Bon Harbor before he purchased the property; that Hinds and Kirkland used Bon Harbor funds for their own purposes, and that the defendants knew and concealed these facts from the investors. The investors also allege that the defendants knew that Ja-cobsen had purchased the property for $5,000,000 just days before the July 2005 transaction; that this information was entirely under the control of the defendants; and that the defendants concealed “and otherwise prevented” the investors from discovering the information before, during, and after the July 2005 transaction. The investors, therefore, allege the facts or circumstances by which the defendants concealed the investors’ causes of action or injury. See
 
 Miller,
 
 409 So.2d at 422;
 
 Lowe,
 
 477 So.2d at 342; and
 
 Smith,
 
 860 So.2d at 347.
 

 Regarding this point, the investors also allege that Hinds, Decatur, Kirkland, and Gulf Stream had fiduciary obligations to disclose to them information concerning the July 2005 transaction but failed to do so. Specifically, the investors allege that Hinds and Kirkland were acting as managers of Bon Harbor and that the investors entrusted the negotiation and consummation of the July 2005 transaction to Hinds and Kirkland because of their superior knowledge and experience. The investors also allege that Decatur and Gulf Stream
 
 *228
 
 were majority members of Bon Harbor and owed fiduciary duties to DGB as an alleged minority member.
 

 In their briefs on appeal, the parties argue extensively regarding the merits of the questions whether Hinds, Decatur, Kirkland, and Gulf Stream owed the investors any duty to disclose information and whether fiduciary relationships existed among them. However, whatever may later be determined in the trial court proceedings, this appeal comes to us from the trial court’s dismissal of the investors’ claims and “this Court does not consider whether the [investors] will ultimately prevail, but only whether [they] may possibly prevail.”
 
 Nance,
 
 622 So.2d at 299. When the allegations of the third amended complaint are viewed most strongly in the investors’ favor, see
 
 Nance,
 
 supra, the investors allege 1) that fiduciary and other relationships existed between them and Hinds, Decatur, Kirkland, and Gulf Stream that obligated those defendants to disclose information to the investors and 2) that those defendants failed to do so. Based on these allegations, we cannot say that investors cannot possibly prevail on this point. The investors, therefore, have sufficiently alleged that the defendants owed them duties to disclose information and that they breached those duties as an additional fact or circumstance by which Hinds, Decatur, Kirkland, and Gulf Stream concealed the investors’ causes of action or injury. See
 
 Miller, Lowe,
 
 and
 
 Smith,
 
 supra.
 

 Finally, the third amended complaint alleges that the investors had no actual knowledge
 
 of the
 
 fact that Jacobsen had obtained Bon Harbor funds before he purchased the property, of Hinds and Kirkland’s personal use of Bon Harbor funds, or of the fact that Jacobsen paid $5,000,000 for the property; that the investors did not have access to that information because it was entirely under the control of the defendants; that the investors entrusted the negotiation and execution of the purchase to Hinds and Kirkland; and that the investors did not obtain the property records underlying the transaction because they relied on the defendants’ silence and representations regarding the purchase price. Accordingly, the investors have alleged the circumstances that prevented their discovery of the facts surrounding their injury. See
 
 Miller, Lowe,
 
 and
 
 Smith,
 
 supra. Any question regarding the reasonableness of the investors’ actions or inactions is not yet before us. See
 
 Nance,
 
 supra. Whatever may be shown at any subsequent trial proceedings, the investors have alleged sufficient facts showing that their claims fall within the savings clause of § 6-2-3. Accordingly, the dismissal of the investors’ claims on the ground of the statute of limitations at this stage of the proceedings was error.
 

 II.
 
 Standing
 

 The parties next dispute whether the investors have standing to maintain their claims against the defendants. The defendants argue that any injury resulting from their actions is an injury to Bon Harbor, not to the investors. The defendants argue that the investors’ claims are therefore derivative in nature and that, as a result, 1) Herrick, Katz, and Vance have no standing to seek relief individually, and 2) DGB was required to first demand that Bon Harbor sue the defendants and, if that demand was unsuccessful, to then pursue a derivative claim under § 10-12-25, Ala. Code 1975.
 
 [5]
 
 The investors contend that
 
 *229
 
 they have alleged injury to themselves individually, not just injury to Bon Harbor. Accordingly, the investors argue, they have standing to maintain individual claims against the defendants.
 

 The defendants cite this Court’s decision in
 
 Carey v. Howard,
 
 950 So.2d 1131 (Ala.2006).
 
 Carey
 
 involved property held by a family-owned limited liability company (“the LLC”). Certain members of the LLC (“the petitioners”) sought a judgment declaring that another member’s option to purchase an interest in the LLC’s property for a price allegedly below market value was unenforceable. On appeal, this Court considered whether the petitioners had standing to maintain their claim for declaratory relief. Based on the language of the Declaratory Judgment Act, § 6-6-223, Ala.Code.1975, this Court stated that the petitioners had “standing to seek declaratory relief relating to the option agreement only if they [were] ‘interested under’ or if their ‘rights, status, or other legal relations [were] affected by’ the option agreement.” 950 So.2d at 1135. This Court determined that, because the challenged option related only to an interest in property held by the LLC, the only injury alleged by the petitioners was an injury to the LLC. As a result, this Court determined that “any right to bring a declaratory-judgment action with respect to that injury restfed] with the LLC” and could be pursued only by the LLC itself or by the plaintiffs derivatively under § 10-12-25. 950 So.2d at 1136. This Court further concluded that the petitioners had not alleged any injury to their separate individual interests in the property held by the LLC and therefore that they “lacked standing to seek declaratory relief in their individual capacities.” 950 So.2d at 1137.
 

 In this case, the investors have not attempted to state any derivative claim on behalf of Bon Harbor; instead they assert claims only on their own behalf. They allege that the defendants made representations directly to and concealed information directly from them regarding the circumstances surrounding the July 2005 transaction. They allege that they relied on the defendants’ representations and concealments and that, as a result, Herrick, Katz, and Vance personally guaranteed the $7,500,000 loan from United Bank and, therefore, were personally interested in the July 2005 transaction. The investors also allege that neither Hinds nor Kirkland contributed any funds to the July 2005 transaction and that the investors were required to pay the remaining $2,500,000 of the purchase price. Based on these allegations, the investors argue that they suffered individual injury as a result of the defendants’ actions.
 

 To the extent that the third amended complaint states injury to Bon Harbor as a result of the defendants’ conduct, the investors have no standing to recover on Bon Harbor’s behalf. However, based on the allegations described above, unlike the circumstances presented in
 
 Carey,
 
 we conclude that the investors have alleged injury to themselves individually; that their claims are not derivative in nature; and, therefore, that they had standing to maintain their claims against the defendants.
 

 III.
 
 Sufficiency of Pleading
 

 Finally, the investors argue on appeal that the trial court erred in dismissing their claims because, they argue, their claims of fraudulent misrepresentation, fraudulent suppression, and securities
 
 *230
 
 fraud are stated with particularity as required by Rule 9(b), Ala. R. Civ. P., and because the remaining counts of their third amended complaint state claims upon which relief can be granted and are therefore not subject to dismissal under Rule 12(b)(6), Ala. R. Civ. P. The defendants argue that none of the claims alleged against them are sufficiently pleaded.
 

 A.
 
 Fraudulent Misrepresentation
 

 The investors asserted their claim of fraudulent misrepresentation against Hinds, Decatur, Kirkland, Gulf Stream, and Jacobsen. Rule 9(b), Ala. R. Civ. P., provides: “In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.” The Committee Comments on 1973 Adoption of Rule 9 explain:
 

 “[T]his special requirement [in Rule 9(b) ] as to fraud and mistake does not require every element in such actions to be stated with particularity. It simply commands the pleader to use more than generalized or conclusory statements to set out the fraud complained of. The pleading must show time, place and the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained. ... But knowledge by the defendant of the falsity of the representation and reliance on the representation by the plaintiff can still be generally alleged. ... [I]t should be expected that the courts will strive to find the details necessary for the sufficiency of such a complaint if the pleading gives fair notice to the opposing party....”
 

 See also
 
 Bethel v. Thorn,
 
 757 So.2d 1154, 1158 (Ala.1999). “The purpose of this rule is to give fair notice to the opposing party.”
 
 Winn-Dixie Montgomery, Inc. v. Henderson,
 
 371 So.2d 899, 901 (Ala.1979); see also
 
 Kabel v. Brady,
 
 519 So.2d 912, 916 (Ala.1987).
 

 In their third amended complaint, the investors allege the following facts regarding Hinds, Decatur, Kirkland, and Gulf Stream: 1) that Jacobsen purchased the property for $5,000,000 just days before the July 2005 transaction; 2) that Hinds, Decatur, Kirkland, and Gulf Stream knew and concealed this information from the investors; 3) that this information was entirely under the control of those defendants; 4) that they concealed from “and otherwise prevented” the investors from discovering the information before, during, and after the purchase of the property; 5) that Hinds and Kirkland obtained an appraisal of the property for $14,000,000 with knowledge that Jacobsen had purchased the property for $5,000,000 only days before; 6) that Hinds and Kirkland reported that the purchase price of the property was $10,000,000; 7) that Bon Harbor purchased the property for $10,000,000 and that Herrick, Katz, and Vance personally guaranteed the $7,500,000 loan from United Bank, and the investors were required to contribute the remaining $2,500,000 toward the transaction; and 8) that the investors did not obtain the property records underlying the July 2005 transaction because they relied on Hinds’s and Kirkland’s silence and representations regarding the transaction.
 

 Based on the foregoing, it is apparent that the investors allege the time of the misrepresentations made by Hinds, Decatur, Kirkland, and Gulf Stream (July 2005), the content of the misrepresentations (that the purchase price of the property was $10,000,000 and the appraised value of the property was $14,000,000), the facts misrepresented (that the value of the property was $5,000,000), the defendant’s knowledge of the falsity of the representations (Hinds,
 
 *231
 
 Decatur, Kirkland, and Gulf Stream’s knowledge that Jacobsen had purchased the property for $5,000,000 only days before the July 2005 transaction), and the result of the misrepresentations (Bon Harbor purchased the property for twice its value; Herrick, Katz, and Vance personally guaranteed a $7,500,000 loan; and the investors contributed $2,500,000 toward the transaction).
 

 The investors did not allege the place where the misrepresentations occurred. However, their third amended complaint included sufficient allegations to place the defendants on notice of the acts complained of; the investors, therefore, satisfied the requirements of Rule 9(b). See
 
 VanLoock v. Curran,
 
 489 So.2d 525, 534 (Ala.1986) (“While the pleading is perhaps not a model of clarity and specificity, it sufficiently comports with the purpose of Rule 9(b) in that it gives the defendants fair notice of the acts complained of.”) The trial court, therefore, erred in dismissing the investors’ fraudulent-misrepresentation claim as to Hinds, Decatur, Kirkland, and Gulf Stream.
 

 Regarding Jacobsen, the investors have alleged only that he sold the property to Bon Harbor for more than he paid for it. It does not appear from the allegations of the third amended complaint that Jacobsen had any direct dealings with the investors or that he misrepresented any material facts to them. Accordingly, the investors have not pleaded their claim of fraudulent misrepresentation against Ja-cobsen with particularity as required by Rule 9(b). The trial court, therefore, correctly dismissed this claim as to Jacobsen.
 

 B.
 
 Fraudulent Suppression
 

 The investors asserted their claim of fraudulent suppression against Gulf Stream, Kirkland, Decatur, Hinds, and Ja-cobsen. The elements of a claim of fraudulent suppression are: “ ‘(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury.’ ”
 
 Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.,
 
 932 So.2d 883, 891 (Ala.2005) (quoting
 
 Lambert v. Mail Handlers Benefit Plan,
 
 682 So.2d 61, 63 (Ala.1996)). This claim must be pleaded with particularity under Rule 9(b).
 

 Regarding a duty to disclose, the investors allege 1) that Hinds and Kirkland, as managers of Bon Harbor, had a duty to disclose material facts regarding the July 2005 transaction to the investors; 2) that Decatur and Gulf Stream, as members of Bon Harbor, had a duty to disclose material facts regarding the July 2005 transaction to the investors; 3) that Hinds, Decatur, Kirkland, and Gulf Stream had fiduciary relationships with the investors under which they had a duty to disclose material facts regarding the July 2005 transaction to the investors; and 4) that the investors entrusted Hinds and Kirkland with the negotiation of the July 2005 transaction based on their superior experience and knowledge.
 

 As to Jacobsen, the investors have not alleged that he had any duty to disclose information to them. Therefore, the investors have not sufficiently pleaded their claim of fraudulent suppression against Jacobsen. As to Hinds, Decatur, Kirkland, and Gulf Stream, as discussed above, the parties argue extensively regarding the merits of the question whether these defendants owed a duty to disclose to the investors or had any fiduciary relationship with them. As stated above, at this stage of the litigation we must consider only whether the investors have stated any set of facts upon which they may possibly prevail. See
 
 Nance,
 
 supra. Con
 
 *232
 
 sidering the allegations listed above, the investors have sufficiently alleged that these defendants had duties — arising from their status as managers, members, and fiduciaries — to disclose information to DGB, as a member of Bon Harbor, and to Herrick, Katz, and Vance, as guarantors of the United Bank loan.
 

 Regarding the concealment or nondisclosure of material facts by Hinds, Decatur, Kirkland, and Gulf Stream, the investors allege 1) that Jacobsen had obtained funds from Bon Harbor before he purchased the property; 2) that Hinds and Kirkland used Bon Harbor funds for their own purposes; 3) that Jacobsen purchased the property for $5,000,000 just days before Bon Harbor purchased it from him for $10,000,000; 4) that the defendants knew of these facts and that the information was entirely in the control of the defendants; and 5) that the defendants concealed from “and otherwise prevented” the investors from discovering the information before, during, and after the transaction. The investors have therefore alleged that Hinds, Decatur, Kirkland, and Gulf Stream concealed material facts regarding the July 2005 transaction from them.
 

 Regarding whether these defendants induced the investors to act, the investors allege that they participated in the July 2005 transaction and that they did not obtain the property records underlying the transaction because they relied on the actions, silence, and representations of Hinds, Decatur, Kirkland, and Gulf Stream. Finally, regarding whether the investors acted to their injury, they allege that Bon Harbor purchased the property for twice its value, that Herrick, Katz, and Vance personally guaranteed the $7,500,000 Union Bank loan, and that the investors contributed $2,500,000 to the transaction. The investors, therefore, have alleged each element of their fraudulent-suppression claim against Hinds, Decatur, Kirkland, and Gulf Stream with particularity as required by Rule 9(b). Therefore, the trial court correctly dismissed the fraudulent-suppression claim as to Jacobsen but erred in dismissing that claim as to Hinds, Decatur, Kirkland, and Gulf Stream.
 

 C.
 
 Securities Fraud
 

 Section 8 — 6—19(a)(2), Ala.Code 1975, grants the buyer of a security a right of action against a seller who sold the security “by means of any untrue statement of a material fact or any omission to state a material fact.” This Court has stated: “[A] claim of a violation of § 8-6-19(a)(2), Ala.Code 1975, requires (1) a sale or an offer to sell a security (2) by means of a false statement or omission (3) of material fact and (4) the ignorance of the buyer as to the untruth or omission.”
 
 Blackmon v. Nexity Fin. Corp.,
 
 953 So.2d 1180, 1191 (Ala.2006). This claim must be pleaded with particularity under Rule (b).
 

 The investors asserted their claim of securities fraud against Hinds, Decatur, Kirkland, and Gulf Stream. In their briefs on appeal, the investors maintain that this claim relates to DGB’s purchase of a 40% interest in Bon Harbor in June 2005. It is unclear whether a claim under § 8-6-19(a)(2) may arise from the sale of an interest in an LLC. Moreover, the investors have not alleged any false statement or omission of material fact by Hinds, Decatur, Kirkland, or Gulf Stream relating to DGB’s purchase of an interest in Bon Harbor. The investors, therefore, have not stated a claim of securities fraud upon which relief can be granted, and the trial court did not err in dismissing the claim.
 

 D.
 
 Shareholder Oppression
 

 The investors asserted a claim of shareholder oppression against Hinds, De
 
 *233
 
 catur, Kirkland, and Gulf Stream. In their brief on appeal, the investors cite only § 10-12-21(h), Ala.Code 1975, and a legal treatise to support their contention that the trial court erred in dismissing that claim. Section 10-12-21(h) states only that “[a] member shall discharge the duties to a member-managed company and its other members under this chapter or under the operating agreement and exercise any rights consistently with the obligation of good faith and fair dealing.” The investors have not cited any Alabama authority showing that § 10-12-21(h) applies to Hinds, Decatur, Kirkland, or Gulf Stream, or that § 10-12-21(h) supports a claim of “shareholder oppression.” Nor have the investors cited any authority showing that the allegations of their third amended complaint adequately state such a claim.
 

 This Court has stated:
 

 “Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant’s brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ Further, ‘it is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments.’
 
 State Farm Mut. Auto. Ins. Co. v. Motley,
 
 909 So.2d 806, 822 (Ala.2005) (citing
 
 Ex parte Showers,
 
 812 So.2d 277, 281 (Ala.2001)). This is so, because ‘
 
 “it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by stijfi-cient authority or argument.”
 
 ’
 
 Butler v. Town of Argo,
 
 871 So.2d 1, 20 (Ala.2003) (quoting
 
 Dykes v. Lane Trucking, Inc.,
 
 652 So.2d 248, 251 (Ala.1994)).”
 

 Jimmy Day Plumbing & Heating, Inc. v. Smith,
 
 964 So.2d 1, 9 (Ala.2007) (emphasis added). Because the .investors have not complied with the requirements of Rule 28(a)(10), Ala. R. Civ. P., we will not consider their arguments as to this claim, and we affirm the trial court’s dismissal of this claim.
 

 E.
 
 Breach of Fiduciary Duty
 

 The investors allege a claim of breach of fiduciary duty against Hinds, Decatur, Kirkland, and Gulf Stream. In
 
 Bank of Red Bay v. King,
 
 482 So.2d 274 (Ala.1985), a fiduciary or confidential relationship was defined:
 

 “ ‘ “A confidential relationship is one in which one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other’s interests, or when one person has gained the confidence of another and purports to act or advise with the other’s interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.”
 

 “ 15A C.J.S. Confidential (1967).’ ”
 

 482 So.2d at 284. See also
 
 K & C Dev. Corp. v. AmSouth Bank, N.A.,
 
 597 So.2d 671, 675 (Ala.1992). As discussed above, the investors have sufficiently alleged the existence of fiduciary relationships with
 
 *234
 
 these defendants. The investors further allege that these defendants breached their fiduciary duties by misrepresenting information to and concealing information from the investors, by using Bon Harbor funds for their own purposes, and by proceeding with the July 2005 transaction despite knowledge of the actual value of the property. Finally, the investors allege that they were injured as a result of these defendants’ actions because Bon Harbor purchased the property for twice its value, Herrick, Katz, and Vance guaranteed the $7,500,000 United Bank loan, and the investors contributed $2,500,000 toward the July 2005 transaction. Based on the foregoing, the investors have stated a claim of breach of fiduciary duty upon which relief may be granted, and the trial court erred in dismissing the claim.
 

 F.
 
 Civil Conspiracy
 

 The investors state a claim of civil conspiracy against Hinds, Decatur, Kirkland, Gulf Stream, and Jacobsen based on an alleged conspiracy among them to “commit the ... intentional torts” alleged in their third amended complaint. This Court has stated:
 

 “ ‘Alabama recognizes [civil conspiracy] as a substantive tort.’
 
 Purcell Co. v. Spriggs Enters., Inc.,
 
 431 So.2d 515, 522 (Ala.1983). ‘In essence, civil conspiracy is a combination of two or more persons to do: (a) something that is unlawful; [or] (b) something that is lawful by unlawful means.’
 
 Id.
 
 See also
 
 Eidson v. Olin Corp.,
 
 527 So.2d 1283, 1285 (Ala.1988). ‘In a conspiracy, the acts of co-conspirators are attributable to each other.’
 
 Williams v. Aetna Fin. Co.,
 
 83 Ohio St.3d 464, 476, 700 N.E.2d 859, 868 (1998).”
 

 Ex parte Reindel,
 
 963 So.2d 614, 621 n. 11 (Ala.2007). “A civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged, or planned the wrongdoer’s acts.” 16 Am.Jur.2d
 
 Conspiracy
 
 § 57 (2009). “A plaintiff alleging a conspiracy must have a valid underlying cause of action.
 
 [Drill Parts & Serv. Co. v. Joy Mfg. Co.,
 
 619 So.2d 1280 (Ala.1993).] ‘[A] conspiracy claim must fail if the underlying act itself would not support an action.’
 
 Triple J Cattle, Inc. v. Chambers,
 
 621 So.2d 1221, 1225 (Ala.1993).”
 
 Callens v. Jefferson County Nursing Home,
 
 769 So.2d 273, 280 (Ala.2000). Based on these principles, the defendants argue that, because the investors’ underlying claims were dismissed, the trial court also correctly dismissed their claim of civil conspiracy.
 

 We have previously concluded that the trial court erred in dismissing the investors’ claims of fraudulent misrepresentation and fraudulent suppression as they relate to Hinds, Decatur, Kirkland, and Gulf Stream. The investors allege that those defendants agreed and worked together, with Jacobsen, to knowingly misrepresent information to and conceal material facts from the investors. The investors, therefore, have alleged that this combination of persons and entities — Hinds, Decatur, Kirkland, Gulf Stream, and Jacob-sen — agreed and acted together to engage in unlawful conduct that injured the investors. Because the investors have alleged valid underlying causes of action and because acts of coconspirators are attributable to each other, see
 
 Reindel,
 
 supra, the investors have stated a claim of civil conspiracy upon which relief may be granted against each of these defendants. Accordingly, the trial court erred in dismissing this claim.
 

 G.
 
 Negligence
 

 The investors state a negligence claim against Hinds and Kirkland. “In any negligence case, the plaintiff bears
 
 *235
 
 the burden of proving the existence of a duty owed by the defendant, a breach of that duty, causation, and damage.”
 
 Glass v. Birmingham Southern R.R.,
 
 905 So.2d 789, 794 (Ala.2004). The investors allege that Hinds and Kirkland, as managers of Bon Harbor and individuals to whom the investors had entrusted the negotiations culminating in the July 2005 transaction, owed a duty of care with respect to that transaction; that Hinds and Kirkland breached that duty of care by going forward with the July 2005 transaction with knowledge that the value of the property was less than the investors were required to pay; and that the investors were injured by Hinds and Kirkland’s conduct in that they contributed $2,500,000 toward the July 2005 transaction and Herrick, Katz, and Vance personally guaranteed the $7,500,000 United Bank loan. Accordingly, the investors have stated a claim of negligence upon which relief may be granted, and the trial court erred in dismissing this claim.
 

 H.
 
 Accounting and Dissolution
 

 In their brief on appeal, the investors do not cite any authority to support their argument that the trial court erred in dismissing their claim for an accounting and dissolution of Bon Harbor. As noted above, Rule 28(a)(10), Ala. R. Civ. P., requires that appellants support their arguments with citations to authority. “1 “[I]t is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.” ’ ”
 
 Jimmy Day Plumbing,
 
 964 So.2d at 9 (quoting
 
 Butler v. Town of Argo,
 
 871 So.2d 1, 20 (Ala.2003), quoting in turn
 
 Dykes v. Lane Trucking Inc.,
 
 652 So.2d 248, 251 (Ala.1994)). Because the investors have failed to comply with the requirements of Rule 28(a)(10) as to this claim, we will not consider their arguments and we affirm the trial court’s dismissal of this claim. We note, however, that the resolution of the remaining claims in this proceeding on remand may give rise to new facts and circumstances that are compatible with a renewal of the matters made the basis of this claim.
 

 Conclusion
 

 Accordingly, we affirm the trial court’s dismissal of the investors’ claim for an accounting and dissolution of Bon Harbor, of their fraudulent-misrepresentation and fraudulent-suppression claims against Ja-cobsen, and of them claims of securities fraud and shareholder oppression. We reverse the trial court’s dismissal of the investors’ claims of breach of fiduciary duty, civil conspiracy, negligence and, as they relate to Hinds, Decatur, Kirkland, and Gulf Stream, their claims of fraudulent misrepresentation and fraudulent suppression. We remand the cause to the trial court for further proceedings consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
 

 [1]
 

 . Although the complaint alleges that this occurred on July 6, 2005, other documents in the record indicate that the date on which the purchase occurred was July 8, 2005.
 

 [2]
 

 . Although the defendants argued before the trial court that the savings clause applied only to fraud-based claims, they do not reassert that argument on appeal.
 

 [3]
 

 . See also
 
 Payton v. Monsanto Co.,
 
 801 So.2d 829, 834 (Ala.2001) (stating regarding complaint alleging negligence, wantonness, breach of a duty to warn, fraud, misrepresentation and deceit, private and public nuisance, trespass, battery, assault, negligent and intentional infliction of emotional distress, strict liability, and breach of riparian rights that "the plaintiff can overcome a defense of limitations by averment and proof of circumstances permitting tolling of the running of the limitations period, such as fraud on the part of the defendant in concealing the wrongdoing....”);
 
 Angell v. Shannon,
 
 455 So.2d 823, 823-24 (Ala.1984) (applying § 6-2-3 and Rule 9(b), Ala. R. Civ. P., to a breach-of-contract claim);
 
 Miller v. Mobile County Bd. of Health,
 
 409 So.2d, 420 (Ala.1981) (applying § 6-2-3 and Rule 9(b) to a breach-of-contract claim)
 
 Amason v. First State Bank of Lineville,
 
 369 So.2d 547, 550 (Ala.1979) ("[Section 6-2-3] would in effect stay the running of the general statute of limitations for torts (one year) until such time as Amason discovered or ought to have discovered, the fraud,”);
 
 Van Antwerp v. Van Antwerp,
 
 242 Ala. 92, 100, 5 So.2d 73, 80 (1941) (stating regarding a predecessor of § 6-2-3 that "this statute makes provision for a limitation of one year from the date of ... discovery, provided its discovery was concealed by some activity of defendant, amounting to a fraud. And in this connection it is not limited to actions based on fraud.”);
 
 Rutledge v. Freeman,
 
 914 So.2d 364, 369 (Ala.Civ.App.2004) ("Although the wording of § 6-2-3 indicates that it applies only to fraud actions, that section and its predecessor have long been held to apply to any cause of action that has been fraudulently concealed from a plaintiff.” (citations omitted));
 
 Crowe v. City of Athens,
 
 733 So.2d 447, 453 (Ala.Civ.App.1999) (applying pleading requirements of Rule 9(b) to conversion action);
 
 City of Gadsden v. Harbin,
 
 398 So.2d 707, 709 (Ala.Civ.App.1981) ("It is well settled that a fraudulent concealment of a tort or injury by the defendant will toll the running of the statute of limitations until the tort or injury is discovered or could have been discovered by due diligence.”).
 

 [4]
 

 . This Court has stated that § 6-2-3 does not provide a "discovery rule” for non-fraud claims. See, e.g.,
 
 Boyce v. Cassese,
 
 941 So.2d 932, 946 n. 2 (Ala.2006);
 
 Sanders v. Peoples Bank & Trust Co.,
 
 817 So.2d 683, 686 (Ala.2001);
 
 Travis
 
 v.
 
 Ziter,
 
 681 So.2d 1348, 1355 (Ala.1996);
 
 Henson v. Celtic Life Ins. Co.,
 
 621 So.2d 1268, 1274 (Ala.1993);
 
 Trust Co. Bank v. State,
 
 420 So.2d 10, 13 (Ala.1982);
 
 Singer Asset Fin. Co. v. Connecticut Gen. Life Ins. Co.,
 
 975 So.2d 375, 382 (Ala.Civ.App.2007); and
 
 Williams v. Norwest Fin. Alabama, Inc.,
 
 723 So.2d 97, 104 (Ala.Civ.App.1998). These cases, however, only disavow a general "discovery rule” for non-fraud claims; they do not speak to the fraudulent concealment of a cause of action.
 

 [5]
 

 . Section 10-12-25(a) states: "A member may bring an action in the right of a limited liability company to recover a judgment in its favor if the members or managers with authority to do so have refused to bring the action or if an effort to cause those members
 
 *229
 
 or managers to bring the action is not likely to succeed.” See also Rule 23.1, Ala. R. Civ. P.