MOORE, Judge.
Randall Dodd' appeals from the' Marion Circuit Court’s judgment dismissing, as time-barred, his second amended complaint against O’Neal Miller, Kyle Miller, and Consolidated Forest Products, LLC. We reverse.

Procedural History

On April 14, 2014, Dodd filed a complaint asserting several' claims against O’Neal Miller, Kyle Miller, Consolidated Forest Products, LLC (“CFP”), and certain fictitiously named defendants. O’Neal Miller, Kyie Miller, and CFP áre sometimes hereinafter referred to collectively as “the defendants.” On May 14, 2014, the defendants filed a motion to dismiss' the complaint, arguing, among other things, that the claims asserted in the complaint were barred by the applicable statutes of limitations. On July 25, 2014, Dodd filed his first-amended complaint. On August 4, 2014, the defendants moved to dismiss the first amended complaint, arguing again, among other things, that the claims, asserted in the first amended complaint were barred by the applicable statutes of limitations. ' On October 2, 2014, Dodd filed a response to the defendants’ motion to dismiss the first amended complaint. On October 8, 2014, the trial court entered an' order directing Dodd to 'amend the complaint within 30 days.
On December 22, 2014, Dodd filed a second amended complaint.[1] The factual allegations set forth in the second amended complaint are, in pertinent part:
“9. Near the end of February 2006, Defendant O’Neal Miller asked [Dodd] to come to work for CFP. .
“10. [Dodd], who was working as the superintendent of a strip mine, was cautious about leaving his job and joining CFP. [Dodd] was satisfied with his rate of pay at the mine.
“11. Nevertheless, [Dodd] and Defendant O’Neal Miller continued to negotiate the terms by which [Dodd] would join CFP. Thereafter, [Dodd] joined CFP as a salesman and was paid a salary.
“12. Defendants did not pay for [Dodd’s] expenses as a salesman. [Dodd] asked Defendants to be put on a straight commission like the other salesmen. At a meeting on or about March 1, 2006, at the CFP office with [Dodd], Scott Crumpton, O’Neal Miller and- Kyle Miller, [Dodd] was offered ten percent (10%) of the .ownership of CFP by O’Neal Miller and Kyle Miller if he would work there as a salesman on salary and forego [sic] compensation based on commission. The ten percent interest in CFP along with a salary served as consideration for [Dodd] to remain at CFP as a salesman and forego [sic] compensation based on commission. [Dodd] *411 relied on the offer, accepted it, and began his part of working to build CFP.
“13. Likewise, Defendants O’Neal Miller and Kyle Miller extended an offer to Scott Crumpton in that he would also become a ten percent (10%) member of CFP.
“14. [Dodd] became one of the top performing salespeople of CFP. However, unlike other salespeople, [Dodd] was not paid a commission on the sales he made. [Dodd’s] compensation for his services were limited to a flat salary.
“15. O’Neal Miller and Kyle Miller continually represented to [Dodd] that he was a ten percent owner of CFP from the time he joined CFP until as recently as November 2013. On that occasion, [Dodd] told Defendant O’Neal Miller that he wanted to be paid a commission on his sales like the other sales people. Defendant O’Neal Miller replied to [Dodd] that he could not have his cake and eat it too. Defendant O’Neal Miller explained that [Dodd] was not entitled to any commission because, unlike the other commissioned sales people, [Dodd] was an owner of CFP. Defendants continued to represent that [Dodd], as a 10% owner, was entitled to 10% of the profits of CFP when they were disbursed to the shareholders.
“16. To date, [Dodd] has not received an equitable percentage of the profits of CFP. When [Dodd] inquired about his equitable percentage of profits in CFP, on multiple occasions extending over the course of his émployment, Defendant O’Neal Miller continuously and consistently replied to [Dodd] that none of the shareholders were taking any share of the profits, and that the profits were being ‘rolled back’ into the business. [Dodd] reasonably relied on Defendant O’Neal Miller’s representations and reassurances that all of the shareholders were working to build CFP to receive even larger profits in the future to forego [sic] immediate distributions of his share of the profits of CFP. [Dodd] was lulled by and reasonably relied on Defendants’ assurances that deferral of his equitable share of the profits during this ‘building1 period could be reasonably expected to produce larger profits in the foreseeable future. Defendants O’Neal Miller and Kyle Miller had superior knowledge of the facts that they never intended to honor [Dodd’s] ownership interest in CFP and that, rather than ‘rolling’ the profits back into CFP, they were converting the profits for ■ their personal use. ' Defendants induced [Dodd] to accept a salary that was less than what other, less able salesman were making,' an action [Dodd] would have never taken knowing the true facts, which Defendants had an obligation to disclose.
■ “17. [Dodd] left his employment with CFP in December of 2013.
“18. Upon information and belief, CFP grosses approximately $20,000,000.00 in'sales-per year.'
“19. Upon information and belief, CFP realizes a profit of approximately $1,000,000.00 per year. Again, [Dodd] avers that he has not received any portion of thé profits of CFP since becoming a ten percent owner when he joined the company. The obligation of Defendants to pay [Dodd] his equitable portion of the profits óf CFP was a continuing obligation that was continuously breached by Defendants until [Dodd] left his employment with CFP in December of 2013.
“20. Upon information and belief Defendants O’Neal Miller and Kyle Miller have converted to their own use money rightfully belonging to [Dodd] and have unjustly enriched themselves at [Dodd’s] *412 expense thereby. Upon information and belief, Defendants have used money rightfully. belonging to [Dodd] for the following:
“a. purchasing automobiles for themselves and family members
“b. fuel expense and other expenses for vehicles and motor home

a ■

“d. football tickets
“e. paying CFP employees to work at the private farm
“f. paying family members more than other employees.”
Dodd alleged claims of suppression, misrepresentation/promissory fraud, conspiracy, breach of contract, conversion/civil theft, unjust enrichment, and “money had and received.” He also requested an accounting and that the profits to which he alleged he was entitled be declared to be held in a constructive trust.
On-December 29, 2014, the defendants moved to dismiss the second amended complaint, arguing, among other things, that the claims asserted in the second amended complaint were.barred by the applicable statutes of limitations. On December 29, 2014, the trial court entered a judgment dismissing Dodd’s second amended complaint as being time-barred. On January 26, 2015, Dodd filed a post-judgment motion; that motion was denied on January 28, 2015. On March 9, 2015, Dodd filed his notice of. appeal to the Alabama Supreme Court; that court subsequently transferred the appeal , to this court, pursuant to § 12-2-7(6), Ala.Code 1975.

Discussion

Dodd’s claims all arise out of the Millers’ alleged promise, in March 2006, to convey to him a 10% share of CFP if Dodd agreed to forgo sales commissions while working for CFP. Dodd essentially alleges that the defendants failed to convey to him any shares in CFP and that the defendants never intended to make him a shareholder in CFP. Alternatively, Dodd alleges that he is a, 10% shareholder of, CFP and that he is therefore entitled to his share of the profits. Dodd did not file his complaint until April 2014, after working eight years for CFP strictly on a salary basis and not receiving a share of any of the alleged profits of CFP. The trial court dismissed Dodd’s second amended complaint on the ground that it was time-barred.
Section 6-2-3, Ala.Code 1975, provides:
“In actions seeking relief' on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.”
Section 6-2-3, known as “the savings clause,” equitably tolls the statute of limitations on tort and breach-of-contract claims when the defendant has fraudulently concealed from the plaintiff his or her cause of action.. See DGB, LLC v. Hinds, 55 So.3d 218, 224-26 (Ala.2010). Relying on § 6-2-3, Dodd argues that the trial court erred in dismissing his second amended complaint because, he says, he did not discover the defendants’ fraud due to the Millers’ continuing misrepresentations that Dodd’s share of the profits were being reinvested in CFP, with the last of those misrepresentations occurring in November 2013.
To invoke the savings clause, the plaintiff -may not rely on a mere generalized allegation that the defendant concealed the plaintiffs cause of action; rather, the plaintiff must state with sufficient particularity how the defendant prevented *413 the plaintiff from discovering the true facts upon which the plaintiffs claim is based. DGB, 55 So.3d at 227. A plaintiff “must allege the time and circumstances of the discovery of the cause of action.” Id. at 226 (citing Angell v. Shannon, 455 So.2d 823, 823-24 (Ala.1984), and Papastefan v. B & L Constr. Co., 356 So.2d 158, 160 (Ala.1978)). “The complaint must also allege the facts or circumstances by which the defendants concealed the cause of action or injury and what prevented the plaintiff from discovering the facts surrounding the injury.” Id. (citing Smith v. National Sec. Ins. Co., 860 So.2d 343, 345, 347 (Ala.2003), Lowe v. East End Mem'l Hosp. & Health Ctrs., 477 So.2d 339, 341-42 (Ala.1985), Miller v. Mobile Cnty. Bd. of Health, 409 So.2d 420, 422 (Ala.1981), and Amason v. First State Bank of Lineville, 369 So.2d 547, 550 (Ala.1979)).
We review the trial court’s ruling on a motion to dismiss de novo without any presumption of correctness. Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993). The appropriate standard of review under Rule 12(b)(6), Ala. R. Civ. P., is “whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [him or] her to relief.” Id. Viewing the allegations of Dodd’s second amended complaint “most strongly” in his favor, we conclude that he sufficiently alleged that he did not discover the defendants’ alleged fi’audulent failure to convey to him a 10% share of CFP or his share of the profits of CFP until after November 2013 because of the Millers’ alleged repeated misrepresentations to him that his share of the profits were being reinvested in the company. The defendants argue that Dodd could not have reasonably relied on the Millers’ alleged misrepresentations; however, on a motion to dismiss, “[a]ny question regarding the reasonableness of [Dodd’s] actions or inactions is not yet before us.” DGB, 55 So.3d at 228. When ruling on a motion to dismiss, “this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he or] she may possibly prevail.” Nance, 622 So.2d at 299.
Based on the foregoing, we hold that Dodd timely filed his original complaint on April 14, 2014, less than six months after the last alleged misrepresentation in November 2013, and, thus, that the trial court erred in dismissing Dodd’s second amended complaint on the basis that it was time-barred. We therefore reverse the trial court’s judgment and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. In his original complaint and in his first amended complaint, Dodd asserted his claims "individually and derivatively on behalf of” • CFP, However, in his second amended complaint, Dodd noted that he had "elect[ed] not to pursue the claims specifically denominated in the original and first amended Complaint as ‘fiduciary’ or ‘derivative’ in nature.”